4:19-mj-06409-JEH    # 1    Page 1 of 15                                          E-FILED
                                                                                        Tuesday, 26 February, 2019 04:23:15 PM
AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means
                                                                                              Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
for the
Central District of Illinois

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. 4:19-mj-06409
INFORMATION ASSOCIATED WITH THE CELLULAR DEVICES )
ASSIGNED CALL NUMBERS 909-269-7177, 323-315-8061, and )
919-292-4965 STORED AT PREMISES CONTROLLED BY )
T-MOBILE/METRO PCS )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

INFORMATION ASSOCIATED WITH THE CELLULAR DEVICES ASSIGNED CALL NUMBERS 909-269-7177, 323-315-8061, and 919-292-4965 STORED AT PREMISES CONTROLLED BY T-MOBILE/METRO PCS

located in the _____ District of _____ New Jersey _____, there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Section 846 | Conspiracy to distribute drugs |

The application is based on these facts:
Please see attached affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/ Jereme Hatler
_____
*Applicant's signature*

DEA Special Agent Jereme Hatler
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___Telephone___ *(specify reliable electronic means)*

s/ Jonathan E. Hawley

Date: 02/25/2019
_____
*Judge's signature*

City and state: ~~Peoria, IL~~ Davenport, IA        Hon. Jonathan E. Hawley, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBERS **(909) 269-7177; (323) 315-8061** and **(919) 292-4965,** THAT IS STORED AT PREMISES CONTROLLED BY **T-MOBILE** | Case No. _____<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Jereme Hatler, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call numbers **(909) 269-7177; (323) 315-8061** and **(919) 292-4965** that is stored at premises controlled by T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the United States Department of Justice, Drug Enforcement Administration (DEA) and have been continuously employed as such since September of 2014. Prior to my employment with DEA, I was a Bettendorf, Iowa Police Officer and held assignments with the Quad City Metropolitan Enforcement Group (QCMEG) as a

Special Agent from January of 2010 until September of 2014 and DEA as a Task Force Officer from February of 2012 until September of 2014. I have been continuously employed as a Law Enforcement Officer since April of 2006. During my law enforcement career, I have been involved in the undercover and controlled purchase of controlled substances, the management and debriefing of confidential sources, the tracing of drug proceeds, and the acquisition and execution of hundreds of search warrants. As a result, I have arrested numerous individuals for violating both state and federal statutes with regard to the possession, manufacture and or sale of controlled substances. I have also received formal training through the Iowa Law Enforcement Academy, Drug Enforcement Administration, Illinois State Police, Iowa Department of Public Safety, Dallas Police Department, among others, and have attended numerous seminars and conferences regarding the distribution of controlled substances and the laundering of drug proceeds.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841 and 846 have been committed by Cooperating Defendant 1, Cooperating Defendant 2, Omar Gutierrez-Valle and Ivan Reyes-Ochoa. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

**PROBABLE CAUSE**

5. On February 26, 2017, in the Central District of Illinois, an Illinois State Police trooper located approximately 10 kilograms of cocaine and 1 kilogram of heroin in a semi-truck driven by Cooperating Defendant 1 (CD1).

6. After the seizure, Law Enforcement utilized CD1 to conduct a controlled delivery of the substances to its intended recipients. Later in the day on 2-26-2017, CD1 met with two males in a Dodge Ram truck while at the Flying J in LaSalle, Illinois. CD1 placed the aforementioned controlled substances in the Dodge Ram truck driven by Omar Gutierrez-Valle. Gutierrez-Valle and his passenger, CD2, were taken in to custody without incident.

7. A subsequent search of the aforementioned Dodge Ram and CD2's person yielded the location of the multiple cell phones.

8. On March 21, 2017, a vehicle was detained via a traffic stop for State of California vehicle code violations. The passenger of the vehicle was identified as Reyes-Ochoa. Pursuant to a positive alert by a canine, a subsequent search of the vehicle yielded the location of approximately 4 kilograms of suspected cocaine. A laboratory later confirmed through chemical analysis one of the packages of suspected cocaine was in fact cocaine.

9. In June of 2017, my fellow agent and I interviewed CD2 under the terms of a proffer agreement CD2 entered in to with the U.S. Attorney's Office for the Central District of Illinois. In summary, CD2 advised my fellow agent and I of the following:

- CD2 positively identified photos of CD1 and Gutierrez-Valle.

- In late 2016, CD2 met Reyes-Ochoa and a second Hispanic male named "Yahir Noriega." Noriega is Yahir's second last name in his hyphenated last name; CD2

does not know Yahir's first last name. CD2 knows Reyes-Ochoa's full name because CD2 saw Reyes-Ochoa's California driver's license.[1]

- In January of 2017, Reyes-Ochoa asked CD2 to travel with him to do a few favors and drive Reyes-Ochoa to certain locations. Reyes-Ochoa told CD2 it needed to know nothing else about the reason or reasons for the trip. Reyes-Ochoa bought 2 Amtrak tickets for him and CD2 to travel to Chicago, Illinois. Reyes-Ochoa and CD2 boarded an Amtrak train in Los Angeles, California on January 8, 2017, and traveled to the Amtrak train station in downtown Chicago.[2]

- After arriving in Chicago, CD2 was introduced to Gutierrez-Valle. Gutierrez-Valle and Reyes-Ochoa are from the same town in Guerrero, Mexico. From the conversation between the two, CD2 learned Gutierrez-Valle assists Reyes-Ochoa transport drugs. CD2 additionally learned drugs are sent to Chicago on a trailer. When said drugs arrive, unspecified persons unload the drugs off the trailer and are subsequently given to Gutierrez-Valle.

- On February 26, 2017, CD2 met Gutierrez-Valle. Gutierrez-Valle was alone operating a white Dodge Ram truck. Prior to meeting CD1, CD2 was instructed

---

[1] In subsequent conversations, CD2 positively identified a photo of Reyes-Ochoa.

[2] Pursuant to a subpoena served on Amtrak, produced records revealed an Ivan Reyes traveled with CD2 from Los Angeles to Chicago in January of 2017.

4

- to purchase 2 phones; one was for CD2 to talk to CD1 with and the second was to give to Gutierrez-Valle. This is what Gutierrez-Valle wanted.

- CD1, who was acting under law enforcement direction, and CD2 tried to negotiate a location to meet but after having some difficulty, Gutierrez-Valle took CD2's phone to talk to CD1. After the phone conversations, CD2 and Gutierrez-Valle traveled together in Gutierrez-Valle's Dodge Ram to meet CD1 at the Flying J truck stop with the Denny's restaurant attached. CD2 assumed he and Gutierrez-Valle were picking up drugs but CD2 did not know the specific type. After meeting CD1, CD2 and Gutierrez-Valle were arrested.

- On 2-26-2017, during CD2's arrest, Law Enforcement seized multiple cell phones to include two which belonged to CD2. One of CD2's cell phones was assigned phone number 919-292-4965. I showed CD2 a portion of the extracted data extracted from one of its cell phones pursuant to the authorization from a search warrant. CD2 positively identified *909-269-7177* as Reyes-Ochoa's phone number.

10.   In August of 2017, my fellow agent and I interviewed CD1 under the terms of a proffer agreement CD1 entered in to with the U.S. Attorney's Office for the Central District of Illinois. In summary, CD1 advised my fellow agent and I of the following:

- Over the course of the last year, CD1 has been asked to assist in transporting drugs. In the beginning of 2017, CD1 finally agreed to assist in the transportation of drugs. The individual requesting the assistance said he needed assistance specifically transporting drugs to the "Windy City."

- CD1 set up a trip with his commercial vehicle transportation company to ensure it would have a legitimate product to transport to the Midwest which would allow it to go through Chicago, Illinois or close thereto. CD1 assumed the intended recipients of the drugs were from Chicago but CD1 never actually knew.

- CD1 agreed to meet with one of the organization's associates. Subsequently, CD1 met with two males in California. A duffel bag was put in CD1's semi-truck by Reyes-Ochoa. This was the duffel bag located by Illinois State Police on February 26, 2017 which later was found to contain heroin and cocaine.

- CD1 traveled east from California towards the Midwest. After arriving in Illinois on 2-26-2017, CD1 was detained via a traffic stop by the Illinois State Police and the heroin and cocaine was located; CD1 agreed to re-deliver the substances on behalf of Law Enforcement. While in contact with the person CD1 would later find out was CD2, during its proactive assistance with Law Enforcement, CD1 also heard a distinct second voice in the background during his conversation with CD1.

- Arrested on State of Illinois drug charges, along with CD2, after CD1 successfully delivered the aforementioned substances, was Gutierrez-Valle. CD1 positively identified a photo of Gutierrez-Valle but noted he had never met him prior to 2-26-2017.

11. In February of 2018, Gutierrez-Valle was indicted, via a true bill, in U.S. District Court for the Central District of Illinois for: one count of Conspiracy to Distribute Drugs and one count of Possession of Drugs with Intent to Distribute (cocaine and heroin) in violation of Title 21 USC sections 841 and 846. Subsequently, an arrest warrant was issued for Gutierrez-Valle.

12. On May 22, 2018, Gutierrez-Valle was arrested at O'Hare International Airport in Chicago, Illinois by Customs and Border Protection personnel after arriving to the airport on an arrival flight from Mexico.

13. On February 19, 2019, CD2 informed me during its time with Reyes-Ochoa in early 2017 in Chicago, after first meeting Gutierrez-Valle, CD2 and Reyes-Ochoa traveled to an unknown city in Indiana, to meet with Gutierrez-Valle at Gutierrez-Valle's residence. When Reyes-Ochoa and CD2 arrived, Reyes-Ochoa entered Gutierrez-Valle's residence with a plastic grocery type bag. CD2 stayed in the car. Reyes-Ochoa then exited Gutierrez-Valle's residence with an envelope. Reyes-Ochoa no longer had possession of the plastic bag. In the envelope was an indeterminate amount of money.

14. This warrant seeks only authorization to obtain historical records. The execution of this warrant does not involve the physical intrusion onto a premise.

Consequently, I submit there is reasonable and good cause for this warrant to be executed at any time, day or night, outside the hours of 6:00 a.m. to 10:00 p.m.

15. Pursuant to authorized search warrants, data was extracted from phones seized by Law Enforcement during the events of February 26, 2017. Additionally, pursuant to a subpoena, records were obtained for phone toll information and or subscriber information relevant to numbers identified during the course of this investigation. Additionally, records were obtained for other non-telephonic records. A review of the extracted data, the records and how they are relevant, revealed, in summary, the following:

- **909-269-7177**
    - A cell phone seized from Gutierrez-Valle's truck which belonged to CD2 was in contact via text message and phone calls with 909-269-7177 on multiple occasions in February of 2017. CD2's cell phone also had two phone numbers under the contact name "Omar" and "Omar 2" in the memory of the phone. Records provided by AT&T pursuant to subpoena for the phone number assigned "Omar 2" in CD2's phone revealed it was also in contact with 909-269-7177 on multiple occasions in February of 2017.
    - A cell phone seized from Gutierrez-Valle's truck, which had pictures of Gutierrez-Valle in the memory of the phone, was in contact, via text message, with 909-269-7177 on multiple occasions in February of 2017.
- **919-292-4965**

- o The cell phone seized from CD2's person was assigned phone number 919-292-4965.

- o The same cell phone seized from Gutierrez-Valle's truck, which had pictures of Gutierrez-Valle in the memory of the phone, was in contact with 919-292-4965 via text message on February 26, 2017.

- **323-315-8061**

    - o Pursuant to subpoena, records were requested from Amtrak for travel of passengers Reyes-Ochoa and or CD2. Provided records from Amtrak revealed Ivan Reyes traveled from Los Angeles to Chicago on January 8, 2017. The records revealed Ivan Reyes traveled with CD2. The phone number listed in this record was 323-315-8061.

    - o The cell phone seized from Gutierrez-Valle's truck, which belonged to CD2, the same one referenced above which had two phone numbers under the contact name "Omar" and "Omar 2" in the memory of the phone, also had relevance. Records provided by AT&T pursuant to subpoena for the phone number assigned "Omar" in CD2's phone revealed it was in contact with 323-315-8061 in February of 2017

16. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information

9

about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

17. Based on my training and experience, I know that T-Mobile can collect cell-site data about the SUBJECT PHONES. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

18. Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and

experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

19. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

20. I further request that the Court direct T-Mobile to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on T-Mobile, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

s/ Jereme Hatler

Jereme L. Hatler
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on 25th day of February, 2019

s/ Jonathan E. Hawley

UNITED STATES MAGISTRATE JUDGE

11

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call numbers **(909) 269-7177, (323) 315-8061** and **(919) 292-4965** that are stored at premises controlled by T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054.

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **January 8, 2017 through February 26, 2017.**

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

2

      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

  b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of **Title 21 USC Section 846** involving Omar Gutierrez-Valle; Ivan Reyes-Ochoa, Cooperating Defendant 1 and Cooperating Defendant 2 during the period **January 8, 2017 through February 26, 2017.**

## III. Timeframe for Information to be Disclosed by the Provider

Given the trial setting for defendant Gutierrez-Valle on March 11, 2019, the provider is directed to provide the foregoing records no later than Friday, February 25, 2019 at 12:00 p.m. central standard time.

3